2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA McCOY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Commissioner of Social Security | : | NO. 12-4115 |

**REPORT AND RECOMMENDATION**

M. FAITH ANGELL                                                                                          May 19, 2014
UNITED STATES MAGISTRATE JUDGE

**I. INTRODUCTION.**

     This is an action brought pursuant to 42 U.S.C. §405(g) and 1383(c)(3) seeking judicial review of a partially favorable decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim prior to April 27, 2010 for disability benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Act.   Presently before this court are the parties' pleadings, including Plaintiff's Motion For Summary Judgment Or, in the Alternative, Request for Remand [Document 8], the Defendant's response thereto [Document 9], and Plaintiff's reply brief [Document 10].

     On July 23, 2013, Counsel presented oral argument.   For the reasons which follow, I recommend that the relief sought by Plaintiff be denied and judgment be entered in favor of Defendant, affirming the decision of the Commissioner.

**II. BACKGROUND AND PROCEDURAL HISTORY.**

Ms. McCoy was born on February 25, 1955.  She completed high school.  *See Administrative Record* [Document 7], at 45, 74.  The Claimant has past relevant work as a machine packager and laborer stores (unskilled positions of medium exertion).  *Record,* at 18.

The decision of which Plaintiff seeks review is the July 14, 2011 decision of ALJ Anne W. Chain.[1]  The procedural events leading to this decision were described by the ALJ as follows:

> "On July 28, 2009, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits.  The claimant also protectively filed a Title XVI application for supplemental security income on July 28, 2009.  In both applications, the claimant alleged disability beginning December 23, 2004.  These claims were denied initially on April 19, 2010.  Thereafter, the claimant filed a written request for hearing on July 15, 2010 (20 CFR 404.929 *et seq*. and 416.1429 *et seq.*).  The claimant appeared and testified at a hearing held on May 31, 2011, in Philadelphia, Pennsylvania.  Christine A. Carrrozza-Roth, an impartial vocational expert, also appeared and provided testimony at the hearing.  The claimant is represented by Jeffrey Lichtman, an attorney."

*Record,* at 11.

In her Opinion, ALJ Chain determined that Plaintiff was not disabled prior to April 27, 2010, but became disabled on that date and has continued to be disabled through the date of her decision.  ALJ Chain further found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time through December 31, 2009, her date last insured.  *Id.*

---

1    Plaintiff filed a timely Request for Review with the Appeals Council.  On June 7, 2012, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the final decision of the Commissioner.  *Record,* at 2-3.

4

Since the alleged onset date of December 23, 2004, the ALJ found the following severe impairments: major depressive disorder, posttraumatic stress disorder, and substance abuse disorder (alcohol) reportedly in remission. The ALJ found additional severe impairments, beginning on April 27, 2010 (the established onset date of disability), including: status post excision plantar fibromas and debridement. *Id.*, at 13.[2]

Considering all of the evidence, the ALJ determined that prior to April 27, 2010, Plaintiff had the residual functional capacity to perform medium work involving no pushing/pulling with lower extremities; simple, routine tasks; short, simple instructions; simple work related decisions with few workplace changes; no interactions with the public; and no more than occasional interaction with co-workers and supervisors. *Id.,* at 15-16.

On July 19, 2012, Plaintiff filed an action in this Court requesting review of the adverse decision. Respondent answered the complaint, Plaintiff filed a motion for summary judgment/request for review, Respondent filed a response in opposition, and Plaintiff filed a reply. This matter has been referred to me, by the Honorable Joel H. Slomsky, for Report and Recommendation.

**III. SOCIAL SECURITY DISABILITY LAW.**

   **A.   Disability Determinations.**

The Social Security Act authorizes several classes of disability benefits, including SSI and DIB benefits. In order to qualify for benefits, a person must be "disabled" under the Social Security Act and the accompanying regulations.

---

2      The ALJ also considered Plaintiff's allegations of limitations from foot pain, chronic obstructive pulmonary disease ("COPD") and bipolar disorder, and ultimately found that none of these allegations was a

5

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any `substantial gainful activity' for a statutory twelve-month period."  *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001)(quoting, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.1999)); 42 U.S.C. §423(d)(1)(1982).   A claimant can establish a disability in either of two ways: (1) by producing medical evidence that one is disabled *per se* as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2000), or (2) by demonstrating an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy.  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. §423(d)(2)(A).

The Commissioner's regulations provide a five (5) step sequential evaluation process for determining whether or not a claimant is under a disability.   20 C.F.R. §404.1520.   The steps are followed in order.   If it is determined that the claimant is not disabled at a step in the evaluation process, the ALJ will not continue on to the next step.

At Step 1, the Commissioner must determine whether the claimant is engaging in substantial gainful activity.   An individual who is working will not be found to be disabled regardless of medical findings.   20 C.F.R. §404.1520(b).   Step 2 involves evaluating severe impairments.   20 C.F.R. §404.1520(c).   Step 3 requires determining whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1.   20 C.F.R. §404.1520(d). Step 4 states that if an individual is capable of performing past relevant work, he will not be found to be disabled.   20 C.F.R. §404.1520(e).   Step 5 requires that if an individual cannot perform past

---

severe medically determined impairment.  *Id.* at 11-12.

relevant work, additional factors must be considered to determine if other work in the national economy can be performed.  20 C.F.R. §404.1520(f).  *See e.g.*, *Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004).

It is the ALJ's responsibility to resolve conflicts in the evidence, and to determine credibility and the relative weights to be given to the evidence.  *Plummer v. Apfel*, 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993).  The ALJ's conclusions must be accepted unless they are without basis in the record.  *Torres v. Harris*, 494 F. Supp. 297, 301 (E.D. Pa. 1980), *aff'd*, 659 F.2d 1071 (3d Cir. 1981).

**B.  Judicial Review of Disability Decisions**.

The role of this court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision.  *Fargnoli v. Massanari*, 247 F.3d at 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000).  Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000).  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence.  *Id.*

It is not the role of the Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ.  *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Upon appeal to this Court, the Commissioner's factual determinations, if supported by substantial evidence, shall be conclusive.  This conclusiveness applies both to findings of fact and to inferences reasonably drawn from the evidence.  *See Fargnoli v. Massanari*, 247 F.3d at 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

**IV. THE ALJ'S DECISION.**

The ALJ received medical evidence and heard testimony from Plaintiff and a vocational expert. Proceeding through the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, and thus satisfied the requirements of Step 1 of the sequential evaluation. *Record,* at 13.

At Step 2, the ALJ found that: "[s]ince the alleged onset date of disability, December 23, 2004, the claimant has had the following severe impairments: major depressive disorder; posttraumatic stress disorder; substance abuse disorder (alcohol) reportedly in remission. Beginning on the established onset date of disability, April 27, 2010, the claimant has had the following additional severe impairments: status post excision plantar fibromas and debridement." *Id.*

At Step 3, the ALJ concluded, since the alleged onset date of disability, that Plaintiff's impairments, considered singly and in combination, do not meet any of the Listings, specifically the Listings in section 1.00 (Musculoskeletal System), Listing 12.04 (Affective Disorders), 12.06 (Anxiety Disorders), and 12.09 (Substance Addiction Disorders). *Record,* at 14-15.

The ALJ reviewed the entire record and determined that, for the period from the alleged onset date to April 27, 2010, Plaintiff had the Residual Functional Capacity to perform "medium work as defined in 20 CFR 404.1567(c) and 416.967(e) except no pushing/pulling with lower extremities; simple, routine tasks; short, simple instructions; simple work related decisions with few workplace changes; no interaction with public; and no more than occasional interaction with coworkers and supervisors." *Id.,* at 15-16. At Step 4, the ALJ found that prior to April 27, 2010, Plaintiff was able to perform her past relevant work as a machine packager and laborer stores, as "[t]his work did not require the performance of work related activities precluded by the claimant's residual functional capacity." *Id.*, at 18.

However, the ALJ found that the claimant's condition worsened in April 2010, when she "developed a plantar fibroma and went to her podiatrist [on] April 27, 2010; she required foot surgery and developed problems requiring further procedures." At this point, the ALJ determined that Plaintiff was limited to "only perform[ing] light exertional work requiring the need to sit/stand at will." *Id.* Beginning on April 27, 2010, Plaintiff was no longer able to perform her past relevant work, and was considered "an individual of advanced age" with a high school education and ability to communicate in English. The ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity, that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform and determined, therefore, that Plaintiff was disabled as of April 27, 2010.

## V.   DISCUSSION

Plaintiff seeks judicial review of the ALJ's determination that she was not disabled during the period from November 21, 2008 (her amended alleged onset date) through April 27, 2010. Plaintiff argues that the ALJ's findings as to the closed period are not supported by substantial evidence because: (1) the ALJ committed reversible error by failing to rule that Plaintiff meets the criteria of Listing 12.06; and (2) the ALJ committed reversible error by failing to accord controlling weight to the mental assessment completed by Plaintiff's treating psychiatrist, Dr. Wilf. *Plaintiff's Motion for Summary Judgment or, In the Alternative, Motion for Remand* [Document 8],[3] at 5-12.

The Respondent argues in opposition that: (1) substantial evidence supports the ALJ's determination that Plaintiff was not disabled under the Act prior to April 27, 2010; (2) Plaintiff has

---

3        Hereinafter "Plaintiff's Request For Review."

not met her burden of proving that she was disabled prior to April 27, 2010; (3) Plaintiff failed to prove that she met or equaled any Listing; and (4) the ALJ followed the controlling regulations in evaluating the opinion evidence.  *Defendant's Response To Request for Review* [Document 9],[4] at 2-17.

Plaintiff filed a reply brief in which she focuses on the Listing issue and argues that the Commission has failed to effectively refute her assertion that the ALJ erred in finding that she did not satisfy Listing 12.06 for the closed period from November 21, 2008 through April 27, 2010. *Plaintiff's Reply Brief* [Document 10].

### A. The ALJ's Determination That Plaintiff Did Not Meet Listing 12.06 Is Supported by Substantial Evidence.

Plaintiff asserts that she met Listing 12.06A and C during the period from her amended alleged onset date of November 21, 2008 through April 27, 2010.  *See Oral Argument, N.T. 7/23/13* [Document 16], at 5.   She argues:

> "The question has to be how did she function during the closed period from November of 2008 through late April of 2010, and if she was not able to function outside the confines of her house on her own, then she meets the listing regardless of what she could do before the period started or what she could do later. [ . . . ]"

*Id.,* at 8.

According to Plaintiff:

> "Her treating sources at WES Health Centers reported that Plaintiff experienced agoraphobia, did not leave her apartment, or needed someone to accompany her when she ventured outside.   [ . . . ] The WES treatment records report Plaintiff's reference to flashbacks of her assault or nightmares [ . . . ]
> That Plaintiff developed a fear of leaving her apartment unaccompanied is not surprising, given her history of assault.   Whether Plaintiff's reluctance to leave her apartment without a companion stems from her fear of being hurt again by her

---

4      Hereinafter "Defendant's Response."

> assailant or from other possible criminal activity is immaterial for purposes of determining whether she meets the criteria of Listing 12.06C. The ALJ found that Plaintiff had severe impairments that included post traumatic stress disorder (PTSD) and major depressive disorder that extended to her alleged onset date of December 23, 2004. [ . . . ] By finding Plaintiff's PTSD to be severe, the court necessarily found that it exerted a significant impact on Plaintiff's mental state. The focus should be on whether Plaintiff could function independently outside the area of her home. Plaintiff maintains that she established that she could not do so. That she feared again becoming the victim of a crime does not mean that she does not meet Listing 12.06C. There is no indication in the record that Plaintiff's fear of leaving the house by herself is due solely to her dangerous surroundings. Someone who has been victimized before may develop a sense of vigilance and fear regarding her safety going forward – a fear that originated in disturbing memories associated with the original trauma and is exacerbated by living in an unsafe neighborhood. [citations to record omitted]."

*Plaintiff's Reply Brief,* at 2-3.

In order to qualify for benefits at step three of the sequential evaluation process, a claimant must show that her impairments meet all of the specified medical criteria of a listed impairment. The burden of production at this step remains with the claimant. *See e.g., Williams v. Sullivan,* 970 F.2d 1178, 1186 (3d Cir. 1992).

To meet the listing for anxiety related disorders (Listing 12.06), the required level of severity for these disorders is met when the requirements of subsection A and B, or A and C, are satisfied. Listing 12.06C requires "a complete inability to function independently outside the area of one's home." 20 C.F.R. pt. 404, subpt. P, app. 1§ 12.06C.

In this case, the ALJ found that "no treating or examining physician has reported findings that meet the severity criteria of any listed impairment." The ALJ specifically considered whether the paragraph C criteria was satisfied and concluded "the evidence fails to establish the presence of the 'paragraph C' criteria." *Record*, at 14-15.

11

As the ALJ determined, no medical source opined that Ms. McCoy was completely unable to function independently outside the home. A State Agency Medical consultant, Lori Hart, Ph.D., saw Plaintiff for a consultative examination on March 12, 2010. *Id.,* at 17. Dr. Hart diagnosed major depressive disorder, panic disorder and post-traumatic stress disorder and opined:

> "Sandra McCoy is a 55-year-old female applying for Disability on the basis of mental health concerns, specifically she reports symptoms reflective of Major Depression, Panic Disorder and PTSD. She reports that all of her symptoms became notable in the year 2005 subsequent to an attempted rape. Ms. McCoy has been in receipt of ongoing mental health treatment since that time and has been prescribed psychotropic medication which she suggests is somewhat effective. Nevertheless, her symptoms persist. With regard to specific occupational concerns (Form 164), Ms. McCoy is likely to be able to understand simple or detailed job instructions. She is likely to be able to adjust to minor changes in work routine and to cope with minor work stressors. Ms. McCoy may have some difficulty interacting well with the public given her suggested high level of anxiety and vigilance. She is likely to be able to make simple decisions with fair judgment. Should she be awarded benefits, she is likely to be able to manage them in her best interest."

*Record,* at 204.

Paul Taren, Ph.D., a State Agency psychologist, reviewed the medical evidence and completed a mental residual functional capacity assessment on March 31, 2011. Dr. Taren determined, *inter alia*, that Plaintiff suffers from PTSD, an anxiety related disorder under Listing 12.06, however, the evidence does not establish the presence of a complete inability to function independently outside of her home. *Id.,* at 211-217. Dr. Taren further found that Plaintiff's impairments resulted in mild restrictions on her activities of daily living (ADL's), moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation. *Id.,* at 216.

Dr. Taren provided detailed notes in support of his conclusions:

"55 yr old woman worked as general laborer through temp agency from 2000 to 12/2004; high school grad in 1973; during face to face interview with FO, no apparent problems of understanding or coherency; difficulty recalling dates and appeared nervous; had all of her medications in hand; during case development, claimant initiated or returned several phone calls to keep adjudicator updated and informed.

Medical records indicate hx of study or tx for hypertension, COPD, foot pain; claimant keeps many medical appts; provides hx and gives informed consent for treatments on her own behalf.

In 2/2005, claimant initiated outpt mh svcs at ComHar; she was assaulted in 12/2004 in the hallway of her apt complex; she has since been feeling fearful when out of her apt; she was living in high crime area at this time; additional hx of alcohol abuse; on initial MSE, proper appearance; alert, oriented; no cognitive impairments; well-spoken; mood depressed/anxious; no psychotic signs; adequate insight and judgment; dx of PTSD; MDD and Alcohol Abuse; regarding functioning, claimant is high school grad; honor roll student; has done factory work since adolescence; regards herself as popular with lots of friends; Baptist faith and occasionally attends church; at annual psychiatric study, dated 1/2008, it was reported that claimant has responded well to tx with focus on sx's of PTSD; she reportedly has stopped alcohol abuse; her mental status is benign with normal manner of interaction, euthymic mood, intact cognitive functions and no overt symptoms of any kind; subsequently, claimant often missed appts due to medical issues; last note in record, dated 10/2009, indicated continuing tx for depression and anxiety.

At IMCE, dated 3/2010; no prior psych admissions; continues in outpt tx at WES; on MSE, neat appearance, proper eye contact and cooperative manner; oriented; problems of concentration noted; mood typically discontent; regards herself as a good person and fun; no suicidal ideation; sometimes hears voice of attacker; normal stream of thinking and no frank psychotic signs; dx-MDD; Panic Disorder; and PTSD; regarding functioning, no problems tending to self-care; lives with sister; no legal problems; often feels drowsy or weakened due to medication and needs help with shopping and chores; uses public transportation; willing to venture out but only with company; shops; examiner source statements indicate slight to moderate impairments across core areas of work-related functioning."

*Id.*, at 218-219.

Plaintiff's treating psychiatrist and her therapist provided an "Assessment of Mental Ability to Do Work-Related Activities," dated May 5, 2011. It was their opinion that Plaintiff had "moderate" limitations in her ability to function independently. *Id.*, at 225[5].

Plaintiff's evidence was insufficient to substantiate her claim that she was completely unable to function independently outside the area of her home, and thus, she did not meet her burden of production to show her impairments meet Listing 12.06C. The ALJ's decision that Ms. McCoy does not meet Listing 12.06C is supported by substantial evidence.

### B.     The ALJ Properly Weighed the Opinion Evidence.

Plaintiff next argues that the ALJ erred in according her treating psychiatrist [Dr. Wilf]'s May 5, 2011 assessment limited weight. She argues that "Dr. Wilf imposed extreme limitations (indicating 'no useful ability to function') with regard to Plaintiff's ability to deal with stress (Tr. 225, answer to no 6)." *Plaintiff's Request for Review*, at 10.

According to Plaintiff,

> "Dr. Wilf's assessment is supported by the great weight of the WES treatment notes. These establish Plaintiff's inability to leave the house by herself; frequent flashbacks to being assaulted; nightmares; panic attacks; difficulty sleeping; social isolation; and limited ability to function independently (Tr. 130, bottom of page; 136, 142 no. 1 under 'Problem'; 146-149, middle of page; 150, under 'History of Present Illness'; 160-161, middle of page; 166, just above middle of page; 170, middle of page; 182, para. 2; 202, bottom of page; 227, para. 1; 251, 253, 255-256, 260-261, 266, para. 1; 267, middle of page; 268, para. 1; 269-271, 274-275, middle of page; 277, near top of page; 278, middle of page; 280, 284-285, 292, near top of page; 374, 381, 397, 402, 404-406, bottom of page)."

*Id.,* at 12.

---

5      The May 5, 2011 Assessment is discussed more fully in the next section.

The ALJ expressly noted "[a]dditional opinion evidence, including assessments by the claimant's treating sources found the claimant's anxiety around people to persist. (Exhibit C11F)." The ALJ assigned "limited weight" to Dr. Wilf's May 11, 2011 opinion, concluding that "[o]verall, however, the claimant's mental conditions do not appear to be very limiting."  *Record,* at 18.

In his May 11, 2011 assessment, Dr. Wilf opined that Plaintiff has the following limitations:

None/slight limitations in Plaintiff's ability to: follow rules; use judgment; maintain attention/concentration; be aware of hazards; understand, remember and carry out simple and detailed instructions; maintain personal appearance; and demonstrate reliability.

Moderate limitations in Plaintiff's ability to: relate to peers; interact with authority figures; function independently; understand, remember and carry out complex instructions; behave in an emotionally stable manner; and relate predictably in social situations.

Marked limitations in Plaintiff's ability to deal with the public.

Extreme limitations in Plaintiff's ability to deal with stress.

*Id.,* at 225-226.

Dr. Wilf described the medical/clinical findings that support the assessment as follows:

"Ms. McCoy is currently taking over 10 different medications for her diagnosis and her physical ailments.   Ms. McCoy's diagnosis of PTSD keeps her from going out at night and going out in the day.   Ms. McCoy is able to go out but with someone with her for support.   Ms. McCoy is making steps to deal with her PTSD but she is not capable at this time to be around a great deal of people.

Ms. McCoy has come a long way from hiding in her closet for days on end.   McCoy is now able to go outside and sit on her steps.   We have been making small steps with Ms. McCoy.   Ms. McCoy just recently was able to take the bus with her friend.   This may seem small to someone else, but for someone with PTSD this is a major step."

*Id.*, at 227-228.

15

When asked if he would expect Plaintiff to experience decompensation or increased psychiatric symptoms in a full-time employment setting, Dr. Wilf responded:

> "Yes, Ms. McCoy's symptoms and issues would increase tremendously because Ms. McCoy is still dealing with being assaulted and almost raped.  The man has not been arrested and is still at large.  See clinical notes for 4/26/11.  Ms. McCoy needs to be in a relaxed setting, not under the pressures of work."

*Id.*, at 227.

The April 26, 2011 Progress note, signed by Nakisha Taylor, MA (Plaintiff's mental health therapist) reads as follows:

> "Met with consumer for an individual therapy session.  Consumer stated that she saw the man who attacked, a few years ago, on the Avenue.  Consumer stated that she couldn't take seeing him and called her sister to come get her.  Consumer said that she stayed with her sister for a week.  Therapist asked the consumer did she report the man to the police when the incident happened.  Consumer replied she did but nothing was done.  Consumer stated that there has been a series of shootings on her block.  'Some guys from Allegheny have a problem with some of her neighbors and their children and some guys did a drive-by.  Consumer said she was 'no more good.'   Therapist suggested talking to her manager about the situation.  Consumer stated that was her next step.
>
> Treatment Plan Goal addressed during this session
> Stress
>
> Assessment (Document reflection of progress made towards treatment goals, and/or assessment of consumer behavior, mood and/or interactions):
> Consumer engaged in conversation.  Consumer maintained eye contact.  Consumer had a small relapse by seeing her attacker, but she is not letting this get her down.  She is continuing to go outside and move on with her life."

*Id.,* at 224.

16

The ALJ examined the WES treatment records, citing her GAF of 55 when she began treatment at WES, which the ALJ stated "is consistent with only moderate symptomatology." *Record*, at 17.[6] As the ALJ found, treatment notes discuss panic attacks resulting in agoraphobia, and show, despite her traumatic experience, that Plaintiff continued to go out – going to West Philadelphia and her son's school on a daily basis in 2006, traveling to visit relatives in the South with her sister in March 2010, and going to Atlantic City in September 2010. The ALJ further cited indications in the treatment notes that medication helped Plaintiff's symptoms, and that after early periods of inconsistent compliance, by January 13, 2010, Plaintiff reported "being better." By March 24, 2010, Plaintiff's fear decreased but "some social isolation remained after leaving an abusive relationship." The ALJ determined that after the established onset date of April 27, 2010, treatment records showed an increase in symptoms. *Id.*[7]

The ALJ discussed the Plaintiff's reported inability to work because of her mental limitations, specifically panic attacks, lack of energy and problems concentrating. She acknowledged Plaintiff's statement that she is scared to go out of the house and does not leave the house alone, and her testimony that she hears voices and has nightmares three to four times a week. *Record,* at 16. While Plaintiff described daily activities that are "fairly limited," the ALJ opined: "even if claimant's activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily

---

6    The date on the initial WES plan is March 22, 2005. *Record*, at 135.
7    The WES treatment notes are contained in the *Record,* at 130-186, 224, 229-236 and 247-407.

17

activities are considered to be outweighed by the other factors discussed in this decision." *Id.*[8] The ALJ concluded that Plaintiff's "statements that she is completely unable to work are not supported and are not credible prior to April 27, 2010, in light of the discrepancies between the claimant's assertions and information contained in the documentary reports." *Record*, at 17-18. The ALJ found that the extent of limitations alleged by Plaintiff was not fully credible, noting that despite the limitations asserted in her application, Plaintiff reported being able to take care of her personal hygiene, to go food shopping with her sister, and being willing to do volunteer work to distribute food. *Id.*, at 15.[9] On August 4, 2007, Plaintiff's therapist at WES noted: "Sometimes she [Plaintiff] tends to exaggerate her problems worse than they actually are." *Record,* at 291.[10]

---

[8] The ALJ specifically cited to a Function Report signed by Plaintiff and dated November 9, 2009. In this document, Plaintiff asserted that her medications make her sleep off and on all day and stated: "The medicines I take leaves me immobile." *Record,* at 76. She went on to state that because of her medications: she needs help to dress and do her hair, she can't cook her meals or do any chores. *Id.*, at 77-78. According to Plaintiff, she needed to be reminded to take her medicines and "my sister does everything, the medicines leaves me incapable." *Id.,* at 78. Plaintiff stated that she only goes out for appointments with her therapists and doctors, she has no social life and needs supervision when shopping, going outside and taking public transportation. *Id.,* at 79-80. Plaintiff stated that she could not pay bills, handle a savings account or use a checkbook/money order, and she hasn't followed written or spoken directions "since illness." Plaintiff said that she doesn't handle changes in routine well and when asked how well she handles stress, she wrote: "I take my medicines when I become irritated." *Id.,* at 81-82.

[9] At her consultative exam with Dr. Hart on March 12, 2010, Plaintiff reported needing assistance with house cleaning (because she feels drowsy), grocery shopping and doing laundry (because she feels anxious around others). However, she stated that she is able to independently handle her personal hygiene and can manage her funds. *Record*, at 204.

In the WES treatment notes, there is a reference on November 17, 2009, of Plaintiff stating that she is interested in volunteering with the elderly and agreeing to call nursing homes and senior centers. *Record*, at 263. On February 16, 2011, Plaintiff's therapist noted "Consumer is taking steps for interaction by joining Philabundance." *Id.,* at 250. At the May 31, 2011 hearing, Plaintiff testified that she "was going to volunteer to help distribute the food because they had sent me a letter in the mail. And [she] thought maybe that would help [her] out with [her] therapy." She thought it would be "something to get [her] out of the house," and she called Philabundance in February. As of the time of the hearing, Plaintiff said she hadn't yet volunteered "because they haven't called [her]." *Record,* at 496-498.

[10] The same therapist described Plaintiff as "a little bit manipulative" and questioned the consistency of her stories. *Record:* at 275; (August 1, 2008); 280 (April 23, 2008); and 284 (February 19, 2008: "Not completely sure that everything she is saying is the truth, as per her neighbor who also sees therapist.").

18

The ALJ considered the opinion evidence, noting that both Dr. Hart and Dr. Taren opined that Plaintiff was able to understand and carry out simple job instructions, adjust to minor changes in work routine, cope with minor stressors, and maintain regular attendance, and that Plaintiff had moderate difficulty in social functioning.  The ALJ concluded that these opinions were consistent with the treatment records and assigned them great weight in determining Plaintiff's residual functional capacity, noting "[w]ith the additional limitations concerning social interactions, these expressed limitations and abilities [in Dr. Hart's and Dr. Taren's opinions] are the basis for the above found residual functional capacity."  *Record*, at 17.[11]

There is no evidence that the ALJ erred in weighing Dr. Wilf's opinion.  The ALJ reviewed the medical evidence, including the treatment notes, and appropriately concluded that it did not support the extent of functional limitation in Dr. Wilf's May 11, 2011 assessment for the period prior to April 27, 2011.  The ALJ explained that the other opinion evidence, specifically the opinions of Dr. Hart and Dr. Taren, was consistent with treatment notes and used these opinions as the basis for determining Plaintiff's residual functional capacity.  The ALJ properly assigned little weight to Dr. Wilf's opinion, despite the fact that he was a treating psychiatrist, on the basis of contradictory

---

11    Dr. Hart opined: "With regard to specific occupational concerns (Form 164), Ms. McCoy is likely to be able to understand simple or detailed job instructions.  She is likely to be able to adjust to minor changes in work routine and to cope with minor work stressors.  Ms. McCoy may have some difficulty interacting well with the public given her suggested high level of anxiety and vigilance.  She is likely to be able to make simple decisions with fair judgment.  Should she be awarded benefits, she is likely to be able to manage them in her own best interest."  *Record,* at 204.
    Dr. Taren opined that Plaintiff was not significantly limited in most areas of functioning, and moderately limited in her ability to: understand and carry out detailed instructions; to maintain attention and

19

medical evidence. *See e.g., Grogan v. Commissioner of Soc. Sec.,* 459 Fed.Appx. 132, 137 (3d Cir. 2012)(stating that the ALJ, who gave a valid reason for her decision, was free to credit the opinion of a consulting opinion over that of a treating psychiatrist where the two conflict).[12]

### C. The ALJ's Determination that Plaintiff Was Not Disabled Prior to April 27, 2010 Is Supported by Substantial Evidence.

The ALJ determined that prior to April 27, 2010, Plaintiff had "the residual functional capacity to perform medium work [ . . . ] except no pushing/pulling with lower extremities; simple routine tasks; short, simple instructions; simple work related decisions with few workplace changes; no interactions with the public; and no more than occasional interaction with co-workers and supervisors," and that she was capable of performing past relevant work as a machine packager and laborer stores. *Record*, at 15, 18.

---

concentration for extended periods; complete a normal workweek without interruptions from psychologically based symptoms; and interact appropriately with the public. *Id.*, at 220-221.

12  The *Grogan* Court noted:

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' Morales, 225 F.3d at 317 (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, '[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.' Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). A treating physician's opinion on the nature and severity of a claimant's impairment is only given controlling weight when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the [claimant's] case record.' Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001)(alteration in original)(quoting 20 C.F.R. §404.1527(d)(2)).
When a treating physician's opinion 'conflicts with that of a non-treating, nonexamining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429); see Fargnoli, 247 F.3d at 43 (when an ALJ 'weighs the credibility of the evidence, he must give some indication of the evidence he rejects and his reason(s) for discounting the evidence.')" *Grogan,* 459 Fed.Appx. at 137.

20

Plaintiff argues the Commissioner's finding that she was not disabled from her amended alleged onset date, November 21, 2008, through the established onset date of April 27, 2011 is not supported by substantial evidence. *Plaintiff's Request for Review*, at 12. For the reasons discussed above, I find that there is substantial evidence to support the ALJ's determination that Plaintiff was not disabled prior to April 27, 2010. I further find additional support in the record for the ALJ's decision as to this closed period as follows:

1. The WES treatment notes repeatedly state that "meds help" with Plaintiff's mental impairments/"better on meds." *Record,* at 133 (July 22, 2009); 360 (April 9, 2010); 361 (January 13, 2010); 363 (March 9, 2009); and 366 (November 24, 2008).
2. Assigned GAF scores for Plaintiff range from 55 to 58, all indicative of moderate symptoms. *Id.* at 135 (GAF of 55 on June 15, 2009); 141 (GAF on 55 on January 28, 2009); 33 (GAF of 58 on August 10, 2010); 340 (GAF of 58 on March 24, 2010); 345 (GAF of 55 on October 27, 2009)
3. At a March 1, 2010 examination, Dr. Mosen Alavi observed that Plaintiff "appeared to be a stressful woman," however, "she followed instructions well." *Record,* at 200.
4. In an April 10, 2010 DPW form, Dr. Wilf diagnosed Plaintiff with "bipolar disorder, mixed type with psychotic features," and explained "Pt's mood swings and auditory hallucinations are too severe for her to function in a normal work situation **without her medication**. [emphasis added]" *Record,* at 236.
5. In treatment notes during the relevant period of time, Plaintiff's therapist consistently described her as pleasant, engaged, calm, talkative, and cooperative with therapeutic interventions. *Id.*, at 257 (April 22, 2010; on this date it was also reported that "Consumer identified socializing with her sister as something she does to decrease social isolation."), 258 (April 8, 2010), 259 (March 24, 2010); 260 (January 27, 2010); 261 (also noting that "Consumer identified her hierarchy of fear with the number one being where she lives."); 262 (January 5, 2010, noting "improved mood and was very talkative. [ . . . ] Consumer also reported that she will be moving out of her high rise which will help her progress towards tx goals."); 263 (November 17, 2009); 264 (October 27, 2009); 265 (September 28, 2009).[13]

---

[13] A notable exception during this time period is the treatment notes of June 15, 2009. Plaintiff's therapist stated that she was "still coughing really hard," and had been for over two months. Plaintiff reported "not being able to sleep [which] made her very tired and depressed." *Record*, at 266.

6. On April 20, 2009, Plaintiff told her therapist that she had joined a gym and signed up for a self-defense course. Plaintiff reported being less depressed because she had stayed at her sister's place for the weekend. Plaintiff agreed to go to the housing authority to check on the status of her move. *Record,* at 267.
7. On January 28, 2009, Plaintiff reported to her therapist that she had a boyfriend who she had been with since 2004. *Id.,* at 271.
8. A treatment plan dated March 24, 2010 states: "Consumer reports that her fear has decreased, however, she is still having problems w/social isolation due to getting out of an abusive relationship." *Record,* at 344.
9. At the May 32, 2011 hearing, Plaintiff told the ALJ that in April 2011 she had attempted to take a stroll on the Avenue but saw her assailant, had a panic attack and had to tell her sister to come get her. When asked when she had last been outside alone prior to April 2011, Plaintiff responded: "a year." *Record,* at 490-491.

There is substantial evidence to support the ALJ's finding that Plaintiff was not disabled for the period from November 21, 2008 through April 27, 2010.

### RECOMMENDATION

Consistent with the discussion above, it is recommended that the relief sought in Plaintiff's Motion For Summary Judgment/Motion for Remand be DENIED, and that judgment be entered in favor of Defendant, affirming the decision of the Commissioner of Social Security. Plaintiff may file objections to this Report and Recommendation within fourteen days after receiving a copy of it. *See* Fed.R.Civ.P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. *See Leyva v. Williams,* 504 F.3d 357, 364 (3d Cir. 2007).

        _S/M. FAITH ANGELL_____
        M. FAITH ANGELL
        UNITED STATES MAGISTRATE JUDGE

By Email:
Hon. Joel H. Slomsky
Michael P. Boyle, Esq.       mpboyle.law@verizon.net
Andrew C. Lynch, Esq.      andrew.lynch@ssa.gov